J-S70035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EWARG LARIOS | |
| Appellant | No. 1698 EDA 2014 |

Appeal from the PCRA Order May 21, 2014
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0002681-2010

BEFORE:  DONOHUE, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED NOVEMBER 20, 2015**

Ewarg Larios appeals from the order of the Court of Common Pleas of Lehigh County that dismissed his petition filed pursuant to the Post Conviction Relief Act.[1]  After careful review, we affirm based on the opinion of the Honorable Maria Dantos dated July 1, 2014, which incorporated Judge Dantos' opinion dated May 21, 2014.

On November 10, 2010, after a jury convicted Larios of conspiracy to deliver cocaine and conspiracy to deliver heroin, the trial court sentenced him to an aggregate sentence of eight to twenty years' imprisonment. Larios appealed his judgment of sentence to this Court, which affirmed on

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

October 21, 2011. *Commonwealth v. Larios*, 37 A.3d 1239 (Pa. Super. 2011) (unpublished memorandum). Larios then filed a petition for allowance of appeal, which our Supreme Court denied on November 28, 2012. *Commonwealth v. Larios*, 57 A.3d 68 (Pa. 2012).

On November 20, 2013, Larios filed a timely *pro se* PCRA petition. Counsel was appointed on November 27, 2013, and on January 3, 2014, counsel filed an amended petition. A hearing was held on May 1, 2014, during which Larios and his counsel, John Peter Karoly, III, Esquire, testified. The Commonwealth presented the testimony of the assistant district attorney who tried the case, Robert Rosner, Esquire.

On May 21, 2014, the PCRA court denied relief. This timely appeal followed, in which Larios raises the following issues for our review.

1. Whether Larios was denied his Sixth Amendment right to effective assistance of counsel under the U.S. Constitution for Karoly's failure to file a post sentence challenge to the imposition of multiple conspiracy convictions which are barred under 18 Pa.C.S. §§ 903(c) and 906.

2. Whether Larios was denied his Sixth Amendment right to effective assistance of counsel under the U.S. Constitution for Karoly's failure to properly "federalize" Larios' claims presented to the appellate courts regarding Agent Morgan's tardy disclosure of his report, which resulted in a trial by ambush in violation of Larios' due process right to a fair trial under the Fourteenth Amendment of the U.S. Constitution.

3. Whether Larios was denied his Sixth Amendment right to effective assistance of counsel under the U.S. Constitution for Karoly's failure to investigate and present a defense expert to refute the Commonwealth's expert testimony of Agent Morgan.

4. Whether Larios was denied his Sixth Amendment right to effective assistance of counsel under the U.S. Constitution for Karoly's failure to interview, call and present Herbert J. Larios as a defense witness?

5. Whether Larios was denied his Sixth Amendment right to effective assistance of counsel under the U.S. Constitution for Karoly's failure to investigate and present the business records that exonerated Larios by establishing that his finances were the result of legal business transactions and not the results of illegal drug proceeds, as the Commonwealth claimed.

6. Whether Larios was denied his Sixth Amendment right to effective assistance of counsel for Karoly's failure to object to the prosecutor's misconduct in securing a conviction through the use of perjured testimony the prosecutor knew was false.

Appellant's Brief, at 4.

In reviewing an appeal from the denial of PCRA relief, "our standard of review is whether the findings of the court are supported by the record and free of legal error." *Commonwealth v. Martin*, 5 A.3d 177, 182 (Pa. 2010) (citations omitted).

To be eligible for relief under the PCRA, Larios must prove by a preponderance of the evidence that his conviction resulted from "ineffective assistance of counsel which, in the circumstances of the particular case so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Commonwealth v. Ousley*, 21 A.3d 1238, 1244 (Pa. Super. 2011). To prevail on an ineffectiveness claim, the defendant must show that the underlying claim had arguable merit, counsel

- 3 -

had no reasonable basis for his or her action, and counsel's action resulted in prejudice to the defendant. **Commonwealth v. Prince**, 719 A.2d 1086, 1089 (Pa. Super. 1998).

After careful review of the parties' briefs, the record and the relevant law, we agree with the Honorable Maria Dantos' analysis and affirm on the basis of her opinion. We instruct the parties to attach a copy of Judge Dantos' decision in the event of further proceedings.

Order affirmed.[2]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2015

---

[2] The Commonwealth did not file a brief. Accordingly, Larios' application to preclude the Commonwealth from filing an untimely brief is denied as moot.

**IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA**

**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA )
                                 )
        vs.                        )       Case No. 2681/2010
                                   )
EWARG LARIOS,                  )
       Defendant               )

\* \* \* \* \* \* \* \*

APPEARANCES:

                WILLIAM STOYCOS, ESQUIRE
                DEPUTY ATTORNEY GENERAL
                    On behalf of the Commonwealth

                IRENE CHIAVAROLI-JOHNS, ESQUIRE
                    On behalf of Defendant

\* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

MARIA L. DANTOS, J.

      Defendant, Ewarg Larios, has filed an appeal from this Court's Order of May 21, 2014, which denied the Defendant's Motion for Post Conviction Collateral Relief. Accordingly, we are issuing this Opinion pursuant to the provisions of Pennsylvania Rule of Appellate Procedure 1925.

      The relevant facts are as follows: On October 1, 2010, Defendant, Ewarg Larios, after a jury trial, was found guilty of Count 4: Criminal Conspiracy to Deliver a Controlled Substance (cocaine)[1] and Count 5: Criminal Conspiracy to

---

[1]    35 P.S. § 780-113(30); 18 Pa. C.S.A. § 903(a)(2).

Deliver a Controlled Substance (heroin).[2] Thereafter, on November 5, 2010, on Count 4, this Court sentenced the Defendant to a term of imprisonment in a state correctional institution of not less than three (3) years nor more than ten (10) years. On the same date, this Court sentenced the Defendant, on Count 5, to a term of state imprisonment of not less than five (5) years nor more than ten (10) years. These counts were ordered to run consecutively to each other. The aggregate sentence ordered was eight (8) to twenty (20) years.[3]

Thereafter, on November 15, 2010, the Defendant filed an appeal to the Superior Court of Pennsylvania, asserting four (4) allegations of error: (1) this Court improperly denied the Defendant's Motion to Preclude the Expert Testimony of Agent Delores Morgan; (2) this Court erred in failing to preclude Agent Morgan from expressing expert opinions at trial when her report did not indicate any opinion to a reasonable degree of certainty; (3) this Court should have granted the Defendant a continuance to allow the defense time to examine and counter the Commonwealth's expert; and (4) the Court erred in failing to grant a mistrial when the prosecutor improperly disclosed the incarcerated status of the Defendant to the jury. In an abundance of caution, in its memorandum opinion submitted to the Superior Court of Pennsylvania, this Court also addressed that: (1) the evidence presented was sufficient to sustain the conviction of the Defendant for the charges of Criminal Conspiracy to Deliver a Controlled Substance (cocaine) and Criminal Conspiracy to Deliver a Controlled Substance (heroin); and (2) the verdict was not against the weight of the evidence. On October 21, 2011, the Superior Court of Pennsylvania

---

[2] 35 P.S. § 780-113(30); 18 Pa. C.S.A. § 903(a)(2).
[3] The Defendant's RRRI minimum is 27 months on Count 4 and 50 months on Count 5, aggregating to a RRRI minimum of 77 months.

2

affirmed this Court's judgment and sentence. Thereafter, on January 26, 2012, a petition for allowance of appeal was filed in the Supreme Court of Pennsylvania, which was denied on November 28, 2012.

On November 20, 2013, the Defendant filed a motion for post conviction collateral relief, as amended on January 3, 2014 and April 30, 2014. An evidentiary hearing relative to said motion was conducted before this Court on May 2, 2014. On May 21, 2014, this Court denied the Defendant's Motion for Post Conviction Collateral Relief and the within appeal followed on June 5, 2014.

On July 31, 2014, this Court instructed the Defendant to file of record and serve upon this Court an amended concise statement of errors complained of on appeal no later than September 1, 2014, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b). The Defendant timely complied with said Order. However, all of the matters within the Defendant's concise statement of errors complained of on appeal have been addressed by this Court's Opinion of May 21, 2014. Consequently, this Court relies on said Opinion of May 21, 2014, and incorporates it herein.

DATED: 9/3/14

BY THE COURT:

Maria L. Dantos, J.

3

# IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)
vs. ) Case No. 2681/2010
)
EWARG LARIOS, )
 Defendant )

\* \* \* \* \* \* \* \*

APPEARANCES:

  WILLIAM STOYCOS, ESQUIRE
  DEPUTY ATTORNEY GENERAL
   On behalf of the Commonwealth

  IRENE CHIAVAROLI-JOHNS, ESQUIRE
   On behalf of Defendant

\* \* \* \* \* \* \*

## OPINION

MARIA L. DANTOS, J.

  On October 1, 2010, Defendant, Ewarg Larios, after a jury trial, was found guilty of Count 4: Criminal Conspiracy to Deliver a Controlled Substance (cocaine)[1] and Count 5: Criminal Conspiracy to Deliver a Controlled Substance (heroin).[2]  Thereafter, on November 5, 2010, on Count 4, this Court sentenced the Defendant to a term of imprisonment in a state correctional institution of not less than three (3) years nor more than ten (10) years.  On the same date, this Court sentenced the Defendant, on Count

---

[1] 35 P.S. § 780-113(30); 18 Pa. C.S.A. § 903(a)(2).
[2] 35 P.S. § 780-113(30); 18 Pa. C.S.A. § 903(a)(2).

5, to a term of state imprisonment of not less than five (5) years nor more than ten (10) years. These counts were ordered to run consecutively to each other. The aggregate sentence ordered was eight (8) to twenty (20) years.[3]

Thereafter, on November 15, 2010, the Defendant filed an appeal to the Superior Court of Pennsylvania, asserting four (4) allegations of error: (1) this Court improperly denied the Defendant's Motion to Preclude the Expert Testimony of Agent Delores Morgan; (2) this Court erred in failing to preclude Agent Morgan from expressing expert opinions at trial when her report did not indicate any opinion to a reasonable degree of certainty; (3) this Court should have granted the Defendant a continuance to allow the defense time to examine and counter the Commonwealth's expert; and (4) the Court erred in failing to grant a mistrial when the prosecutor improperly disclosed the incarcerated status of the Defendant to the jury. In an abundance of caution, in its memorandum opinion submitted to the Superior Court of Pennsylvania, this Court also addressed that: (1) the evidence presented was sufficient to sustain the conviction of the Defendant for the charges of Criminal Conspiracy to Deliver a Controlled Substance (cocaine) and Criminal Conspiracy to Deliver a Controlled Substance (heroin); and (2) the verdict was not against the weight of the evidence. On October 21, 2011, the Superior Court of Pennsylvania affirmed this Court's judgment and sentence. Thereafter, on January 26, 2012, a petition for allowance of appeal was filed in the Supreme Court of Pennsylvania, which was denied on November 28, 2012.

On November 20, 2013, the Defendant filed a motion for post conviction

---

[3] The Defendant's RRRI minimum is 27 months on Count 4 and 50 months on Count 5, aggregating to a RRRI minimum of 77 months.

2

collateral relief, as amended on January 3, 2014 and April 30, 2014. An evidentiary hearing relative to said motion was conducted before this Court on May 2, 2014, from which we make the following findings of fact.[4]

In the instant case, the record facts revealed that the Defendant assisted with bringing in extremely large quantities of cocaine and heroin into the United States from Colombia. Specifically, Agent Thomas Sedor, employed by the Pennsylvania Office of the Attorney General and assigned to the Bureau of Narcotics, without opposition, was deemed an expert in narcotics investigation. Agent Sedor testified that Walter Von Roestel-Navarro, an international drug dealer and Colombian national, as well as a Co-Defendant and business associate of the Defendant, transported drugs to the Lehigh Valley once every three (3) to four (4) months. Indeed, on October 15, 2009, it is undisputed that Co-Defendant Von Roestel-Navarro carried more than one (1) kilogram of heroin within his body. The heroin was packaged in pellets that were swallowed and brought into the United States through JFK International Airport without detection. Similarly, Defendant's brother and Co-Defendant Herbert Larios carried just shy of one (1) kilogram of cocaine on the same trip with Co-Defendant Von Roestel-Navarro.

Pursuant to information that Agent Sedor received from a confidential informant, it was determined that Co-Defendant Rosalinda Cerda, residing in the Fountain Hill area of Bethlehem, Lehigh County, Pennsylvania, was running a cocaine and heroin factory in her apartment. The confidential informant had been in Co-Defendant Cerda's apartment and had seen people crushing and grinding pellets of heroin and cocaine, and then packaging them in small packages to be sold. Because

---

[4]    In its recitation of the facts, this Court cites to the record from the trial as well.

3

Agent Sedor suspected Co-Defendant Cerda of being in the drug trade, Agent Sedor spoke to a second confidential source and instructed him to go to the Spanish grocery Store that Co-Defendant Cerda operated to inquire of purchasing drugs from her. A controlled buy of cocaine was eventually effectuated with Co-Defendant Cerda in February of 2009 on Bishop Thorpe Street, Bethlehem, Lehigh County, Pennsylvania. The cocaine purchased during this controlled buy was not from pellets.

Thereafter, Co-Defendant Cerda moved to 2621 Hartman Drive, Center Valley, Lehigh County, Pennsylvania. Law enforcement personnel conducted three (3) garbage collections and found evidence that Co-Defendant Cerda was still selling cocaine.[5] Consequently a search warrant was applied for and executed on Co-Defendant Cerda's residence on September 22, 2009. The search of her residence yielded two (2) digital scales and approximately fifty (50) grams[6] of cocaine. (C. Ex. 1A; C. Ex. 1; C. Ex. 2; C. Ex. 3; C. Ex. 4).

Agent Sedor spoke with Co-Defendant Cerda who immediately confessed and led the law enforcement officers to her supplier, Ramiro Ortiz. Co-Defendant Cerda agreed to make controlled purchases from Co-Defendant Ortiz while wearing a recording device. The first controlled buy consisted of a 100 gram purchase of cocaine from Co-Defendant Ortiz. The second controlled buy on September 28, 2009, consisted of another 100 gram purchase of cocaine from Co-Defendant Ortiz.[7] At this time Co-Defendant Ortiz was arrested. Co-Defendant Ortiz cooperated with the authorities and told them where his drugs, drug paraphernalia and weapon were

---

[5]    Large empty bags containing residue of cocaine were located.
[6]    Agent Sedor opined that this quantity of cocaine was absolutely meant for resale and would be worth approximately Five Thousand ($5,000.00) Dollars when sold on the street. Agent Sedor further stated that he did not believe that these drugs were from Colombia.

4

located.[8]  Co-Defendant Ortiz provided the officers with the identities of his drug sources and his buyers and distributors, and admitted to participating in a drug trafficking organization.[9]

As a result of the information that the law enforcement authorities received from Co-Defendant Ortiz, Agent Sedor began to investigate the Matos family who lived on Pawnee Street, Fountain Hill, Lehigh County, Pennsylvania:  Carmen Matos (mother), Zaida Matos (sister) and Danny Matos (son).  Through investigation, Agent Sedor confirmed that the Matos family was a distributor for Co-Defendant Ortiz.[10]  (C. Ex. 9).

Thereafter, Agent Sedor commenced an investigation of the Defendant, Co-Defendant Larios and Co-Defendant Von Roestel-Navarro, as Co-Defendant Ortiz's drug suppliers.[11]  On October 15, 2009, Agent Sedor received information from Co-

---

[7]    Neither of these controlled buys involved drug pellets from Colombia.

[8]    A large quantity of cocaine, a firearm and digital scales were located in the detached garage to the rear of Co-Defendant Ortiz's 2104 Glendale Avenue residence.  Co-Defendant Ortiz signed a written waiver to allow the officers to enter his premises. He also consented to a search of his vehicle.

[9]    Co-Defendant Ortiz was the middleman between the Colombian drug smugglers who brought the cocaine and heroin into the United States, and the Matos family that packaged it into smaller quantities and distributed the illegal drugs on the streets of the Lehigh Valley.

[10]    Co-Defendant Ortiz participated in controlled buys with Danny Matos.  On September 29, 2009, Agent Sedor conducted surveillance of the meeting between Co-Defendant Ortiz and Co-Defendant Danny Matos at the residence of Danny Matos' girlfriend on Livingston Street in Bethlehem, Pennsylvania.  (C. Ex. 5; C. Ex. 6A; C. Ex. 6).  Then, on September 30, 2009, Co-Defendant Ortiz went into Carmen Matos' residence and retrieved approximately Fifty-four Thousand ($54,000.00) Dollars in United States currency.  (C. Ex. 7; C. Ex. 7A).  This money was payment for approximately eight hundred (800) grams of heroin.  Search warrants were executed on the Matos' residences.  (C. Ex. 8; C. Ex 14).  At Danny Matos' residence, Five Thousand Nine Hundred ($5,900.00) Dollars in United States currency was located, along with a plastic bag with a white powdery residue that tested positive for cocaine.  In Zaida Matos' residence, all items recovered were paraphernalia to grind up pelletized heroin to be packaged for sale. The Matos family was taken into custody.
    Agent Sedor opined that that this quantity of heroin was beyond street level dealing and amounted to high level drug dealing.  It was at this point that Agent Sedor turned his attention to the Colombians.

[11]    The Defendant was under surveillance from October 4, 2009 through October 15, 2009.

Defendant Ortiz that Co-Defendant Von Roestel-Navarro had arrived in the United States from Colombia and was staying in room 311 at the Red Roof Inn on Catasauqua Road, Lehigh County, Pennsylvania.[12] (C. Ex. 31). Co-Defendant Ortiz informed Agent Sedor that Co-Defendant Von Roestel-Navarro had about one (1) kilogram of heroin on his person and intended to effectuate a drug transaction with Co-Defendant Ortiz. Agent Sedor established surveillance at the Red Roof Inn. The Defendant's vehicle, a 2007 black Mercedes Benz SUV[13], was parked in the vicinity of room 311 at the Red Roof Inn. (C. Ex. 18). Co-Defendants Von Roestel-Navarro and Larios were apprehended when they attempted to utilize the Defendant's vehicle to leave the scene. They admitted to having heroin and cocaine in their systems and were transported to Lehigh Valley Hospital and admitted as a precautionary medical matter.[14] (C. Ex. 19; C. Ex. 20).

Agent Sedor spoke with Co-Defendant Von Roestel-Navarro. Co-Defendant Von Roestel-Navarro was cooperative and confessed that he smuggled heroin into the Lehigh Valley by ingesting pellets of heroin every three (3) to four (4) months between October of 2007 and October of 2009.[15] (C. Ex. 10). Co-Defendant Von Roestel-Navarro admitted to being a part of a drug trafficking organization that brought large quantities of heroin and cocaine into the United States from Colombia. Co-Defendant Von Roestel-Navarro explained that the drugs were bought in Bogota,

---

[12] The Red Roof Inn was booked under Co-Defendant Larios' name.

[13] The Defendant's vehicle was previously identified at the Defendant's home located at 217 Spring Garden Street, Easton, Pennsylvania. (C. Ex. 18).

[14] It takes about three (3) to four (4) days to eliminate the pellets.

[15] From October of 2008 through October of 2009, Co-Defendants Von Roestel-Navarro and Larios came to the United States with drugs four (4) times: October of 2008, February of 2009, June of 2009 and October of 2009. Co-Defendant Ortiz corroborated that the Colombian drugs arrived every three (3) to four (4) months.

6

Colombia.[16] The drugs were then packaged into egg-shaped caplets/pellets weighing eight (8) to ten (10) grams each and covered with wax. The pellets were then ingested and brought to the United States in the stomach of the courier. Co-Defendant Von Roestel-Navarro indicated that Co-Defendant Larios also participated in the swallowing and the transportation of the drug pellets. The drugs that they illegally brought into the United States were then purchased by Co-Defendant Ortiz. Co-Defendant Von Roestel-Navarro was introduced to Co-Defendant Ortiz by Co-Defendant Larios at the Defendant's residence in Easton. In fact, Co-Defendant Von Roestel-Navarro indicated that he and Co-Defendant Larios either stayed at motels or the Defendant's residence when they arrived in the United States with drugs in their systems.[17]

Co-Defendant Von Roestel-Navarro further implicated the Defendant in this drug organization. While it is uncontested that the Defendant did not swallow the pellets himself, the Defendant enlisted friends in the United States to travel to Colombia and bring the drugs back with them to the United States.[18] Moreover, on October 15, 2009, the Defendant permitted Co-Defendants Larios and Von Roestel-Navarro to utilize his Mercedes Benz SUV to travel from JFK International to the

---

[16] One (1) kilogram of cocaine purchased in Bogota costs approximately $2,500.00 in United States currency, and can be sold for $20,000.00 to $25,000.00 in the United States. One (1) kilogram of heroin purchased in Bogota costs approximately $8,000.00 to $9,000.00 in United States currency, and can be sold for $50,000.00 to $55,000.00 in the United States.

[17] Co-Defendant Ortiz also indicated that he would meet the Colombians at either a motel or the Defendant's residence to effectuate the drug transfer. Co-Defendant Ortiz would make prior arrangements to receive money from the Matos family to furnish to Co-Defendants Von Roestel-Navarro and Larios in exchange for the Colombian drugs.

[18] Co-Defendant Von Roestel-Navarro testified that in August of 2009, the Defendant recruited a friend of his to transport drugs from Colombia to the United States. Co-Defendant Von Roestel-Navarro met the Defendant's recruited friend in Cartagena, Colombia in August of 2009, and described him as a thin, white, tall male with short brown hair.

7

Lehigh Valley.[19] Additionally, the Defendant received some of the proceeds from the sale of the illegal drugs.[20] Co-Defendant Von Roestel-Navarro testified that the Defendant would deposit the drug money into his account and then the money would be withdrawn from his account by people in Colombia.

Agent Sedor observed the drug pellets that Co-Defendants Von Roestel-Navarro and Larios defecated while at Lehigh Valley Hospital. (C. Ex. 21; C. Ex. 23; C. Ex. 25). Additionally, a search warrant was obtained for room 311 of the Red Roof Inn. Approximately forty (40) pellets of heroin were found in the motel room. (C. Ex. 23). Similarly, approximately seventy (70) pellets of cocaine were located in room 311.[21] (C. Ex. 25). The total weight of the heroin transported by Co-Defendant Von Roestel-Navarro on October 15, 2009, was 1,154 grams. (C. Ex. 28). The total weight of the cocaine transported by Co-Defendant Larios on October 15, 2009, was 984 grams. (C. Ex. 27).

Agent Sedor explained that the cost of one (1) gram of heroin in the Lehigh Valley was approximately Three Hundred ($300.00) Dollars, and the cost of one (1) gram of cocaine in the Lehigh Valley was approximately One Hundred ($100.00) Dollars. Therefore, the street value of the heroin transported on October 15, 2009, by Co-Defendant Von Roestel-Navarro was Three Hundred Thousand

---

[19] Co-Defendant Von Roestel-Navarro and Co-Defendant Larios met the Defendant at JFK International Airport on October 15, 2009. The Defendant was traveling to Colombia as the Co-Defendants were arriving into the United States. Co-Defendant Von Roestel-Navarro indicated that they had agreed to pay the Defendant Six Hundred ($600.00) Dollars for the use of his vehicle on that day. He indicated that it was a business deal and that the money that was intended to be used to pay for the vehicle came from drug proceeds.

[20] Co-Defendant Von Roestel-Navarro specifically indicated that the Defendant received Nine Thousand ($9,000.00) Dollars in drug proceeds from him in June of 2009. The money was given to the Defendant by Co-Defendant Von Roestel-Navarro at the Defendant's residence.

[21] Co-Defendants Larios and Von Roestel-Navarro had defecated approximately one half (1/2) of the pellets in the motel room prior to being taken into custody.

($300,000.00) Dollars. Similarly, the street value of the cocaine transported on October 15, 2009, by Co-Defendant Larios was One Hundred Thousand ($100,000.00) Dollars.

The Defendant received proceeds from this profitable drug organization.[22] In fact, Co-Defendant Ortiz admitted to giving the Defendant the sum of Twenty Thousand ($20,000.00) Dollars over a period of time in order for the Defendant to purchase drugs in Colombia. In 2009, Co-Defendant Ortiz provided the Defendant with cash, as well as deposited monies directly into the Defendant's First Commonwealth Credit Union account. The relevant bank records reflect a deposit of Eight Thousand Two Hundred ($8,200.00) Dollars directly to the Defendant's account at First Commonwealth Credit Union from Co-Defendant Ortiz on July 6, 2009. (C. Ex. 22). Also, on September 23, 2009, Co-Defendant Ortiz had transferred Five Thousand ($5,000.00) Dollars from his account to the Defendant's account at First Commonwealth Credit Union. (C. Ex. 12; C. Ex. 17). In addition to the two (2) aforementioned transactions, Defendant's accounts reflect many large cash deposits: May 1, 2009 in the amount of $3,357.00; May 4, 2009 in the amount of $7,500.00; May 11, 2009 in the amount of $9,000.00; July 11, 2009 in the amount of $6,600.00; July 18, 2009 in the amount of $9,000.00; September 21, 2009 in the amount of $4,500.00. Defendant's accounts reflect that monies were thereafter withdrawn from Colombia.

Co-Defendant Ortiz also related that in 2009, the Defendant enlisted a

---

[22] Co-Defendant Ortiz characterized the Defendant as the person who "handled the money" within the drug organization.

drug runner to bring in drugs from Colombia to the United States.[23] From this shipment, Co-Defendant Ortiz received approximately 300 grams of heroin from the Defendant. Specifically, the Defendant had made arrangements for a third party to deliver the heroin to Co-Defendant Ortiz at the Arby's on Lehigh Street, Allentown, Lehigh County, Pennsylvania. The Defendant was the individual who placed the calls to both parties to orchestrate the drug transaction. Co-Defendant Ortiz gave the Defendant cash for this drug sale.[24]

Roleen Michael-Schmoyer, a teller at First Commonwealth Credit Union, as well as Michelle Gearinger, the Assistant Branch Manager at First Commonwealth Credit Union, were familiar with the Defendant, because he came into the branch several times. Ms. Gearinger had knowledge of the Defendant making many cash deposits into his First Commonwealth Credit Union account. Also, Co-Defendant Larios made deposits into the Defendant's account as well.[25] In fact, on March 5, 2009, Co-Defendant Larios deposited Nine Thousand ($9,000.00) Dollars cash into the Defendant's account.[26] (C. Ex. 24; C. Ex. 16).

Charges were filed against the Defendant, along with the numerous co-defendants. When Agent Sedor went to the Defendant's residence to take him into custody, the Defendant's roommate, Matthew Tilliton, informed him that he had moved out of the residence and was in Colombia. An arrest warrant was issued on

---

[23] Trial testimony of Co-Defendant Ortiz revealed that the Defendant tried to convince him to be a drug swallower and go to Colombia to retrieve the illegal drugs.

[24] This cash was not part of the $8,200.00 cash that Co-Defendant Ortiz provided to the Defendant.

[25] Co-Defendant Larios was a member of First Commonwealth Credit Union and had an account through this Credit Union. Nevertheless, Co-Defendant Larios deposited funds into the Defendant's account.

[26] The teller received from Co-Defendant Larios $4,500.00 in one hundred dollar bills and

10

January 7, 2010. The Defendant returned from Colombia on May 18, 2010, and he turned himself into authorities on June 3, 2010.[27] (C. Ex. 30).

Defendant was represented at trial by John P. Karoly, III, Esquire. Prior to trial, the Defendant's brother provided Attorney Karoly with an accordion file of business records with regard to the Defendant's side business with his sister of selling retail merchandise purchased in the United States in Colombia. However, the records were incomplete. Indeed, these documents did not provide a full and complete picture of merchandise sales to combat the arguments of the Attorney General. In an effort to be thorough, Attorney Karoly instructed the Defendant to execute releases to obtain further documentation that pre-dated the time of the alleged drug activity. The institutions did not provide said documentation to Attorney Karoly prior to the date of the trial. In fact, these records were never produced by the financial institutions.

Moreover, close to the date of the trial, the Defendant received the forensic accountant's expert report that the Commonwealth planned to rely on at the time of trial. Defense counsel requested a continuance on September 27, 2010, in order to provide him sufficient time to hire an expert to rebut the opinions of Agent Morgan that were included in her expert report. However, this Court found that a continuance was not warranted because defense counsel had complete prior knowledge that the Commonwealth intended to produce Agent Morgan as a witness to render an opinion as to the Defendant's financial transactions.

In addition, the Defendant indicated to Attorney Karoly that he wanted his brother, Co-Defendant Herbert Larios, to testify on his behalf at the time of trial. The

---

$4,500.00 in fifty dollar bills.

[27]     Agent Jose Collazo of the Pennsylvania Office of the Attorney General attempted to

Defendant related to his attorney that his brother was willing to testify and that he thought that the testimony would show that he had not participated in criminal drug activity. However, the Defendant's beliefs were mistaken. Attorney Karoly contacted Eric Dowdle, Esquire, the attorney who represented Co-Defendant Larios on his drug charges. Attorney Dowdle represented to Attorney Karoly that if his client testified truthfully, the testimony would *not* be beneficial to the Defendant. Armed with this information, Attorney Karoly made the strategic decision not to call Co-Defendant Larios at the time of trial.

In his motion for post conviction collateral relief, Defendant contends that his trial counsel was ineffective for: (1) failing to present business records that would have exonerated the Defendant from the charges; (2) failing to call an expert witness to rebut the Commonwealth's expert witness; (3) failing to call Co-Defendant Herbert Larios to testify on the Defendant's behalf; (4) failing to challenge the imposition of sentence on the two (2) conspiracies based on the issues of merger, illegality, violation of double jeopardy or sufficiency or weight of the evidence; and (5) failing to object when Co-Defendants Ortiz and Von Roestel-Navarro perjured themselves at trial when they represented that their trial testimony would not garner favorable consideration when sentenced.

Initially, we note that claims of ineffective assistance of counsel are subject to a three part analysis:

> To establish an ineffective assistance of counsel claim, [defendant] must first demonstrate that the underlying claim is of arguable merit; then, that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate [defendant's] interest; and finally, that but for the

negotiate the Defendant's return to the United States from Colombia.

12

act or omission in question, the outcome of the proceedings
would have been different.

Commonwealth v. Travaglia, 541 Pa. 108, 118, 661 A.2d 352, 356-357 (1995), *U.S. cert.*

*denied*, 116 S.Ct. 931 (1996) (citations omitted). The defendant bears the burden of

proving all three prongs of this standard. Id. With this standard in mind, we address

the Defendant's issues in seriatim.

First, the Defendant argues that his trial counsel was ineffective for failing

to produce at trial the business records from the legitimate retail clothing business that

he had with his sister. The Defendant discussed with Attorney Karoly his desire to

present these business records to show to the jury that he and his sister would

purchase clothing and other retail merchandise in the United States and then send

these items to Colombia for sale, thereby establishing a legal basis for any extra cash.

Specifically, the Defendant contends that his credit card statements, bank statements

and receipts for merchandise would have demonstrated his innocence. This argument

is baseless. While it is true that prior to trial, the Defendant's brother provided

Attorney Karoly with an accordion file of business records with regard to the

Defendant's side business with his sister of selling retail merchandise purchased in

the United States in Colombia, these the records were incomplete. These documents

did not provide a full and complete picture of merchandise sales to combat the

arguments of the Attorney General. Nevertheless, in an effort to be thorough,

Attorney Karoly instructed the Defendant to execute releases to obtain further

documentation that pre-dated the time of the alleged drug activity. The institutions

did not provide said documentation to Attorney Karoly prior to the date of the trial.

Indeed, these records were never produced by the financial institutions.

Consequently, the Defendant's assertion that these business records would have established his innocence lacks any factual basis. Therefore, Attorney Karoly cannot be deemed ineffective in this respect.

Next, the Defendant contends that Attorney Karoly was ineffective for not calling an expert forensic accountant at the time of trial. This argument lacks merit, as Attorney Karoly pursued this issue with the Court. Indeed, Defense counsel requested a continuance on September 27, 2010, in order to provide him sufficient time to hire an expert to rebut the opinions of Agent Morgan that were included in her expert report. However, this Court found that a continuance was not warranted because defense counsel had complete prior knowledge that the Commonwealth intended to produce Agent Morgan as a witness to render an opinion as to the Defendant's financial transactions. Moreover, the Defendant failed to show that the outcome of the trial would have been different had an expert been utilized by the defense. Consequently, Attorney Karoly was not ineffective in his handling of this matter.

In addition, the Defendant avers that Attorney Karoly was ineffective for failing to call Co-Defendant Herbert Larios at the time of trial to testify on the Defendant's behalf. In addressing this specific allegation, we recognize that counsel cannot be deemed ineffective for failing to present witnesses at trial unless the defendant demonstrates all of the following: (1) the defendant must prove the existence and availability of the witness; (2) counsel's awareness of the witness or duty to know of the witness; (3) the witness' willingness and ability to appear on behalf of the defendant; and (4) the necessity of the proposed testimony in order to avoid prejudice.

14

Commonwealth v. Carbone, 707 A.2d 1145, 1153 (Pa. Super. 1998); Commonwealth v. Speight, 544 Pa. 451, 464, 677 A.2d 317, 323 (Pa. 1996). In the instant case, Defendant has established the existence and identity of the witness. Further, Defendant has established that Attorney Karoly knew of the existence of said witness prior to the time of the trial. However, Defendant has not demonstrated that Co-Defendant Larios was willing and available to testify on Defendant's behalf at trial. In fact, the evidence shows that Attorney Karoly contacted Eric Dowdle, Esquire, the attorney who represented Co-Defendant Larios on his drug charges. Attorney Dowdle represented to Attorney Karoly that he would not allow his client to testify at the Defendant's trial. He further indicated that if his client testified truthfully, the testimony would not be beneficial or favorable to the Defendant. Attorney Karoly's decision not to produce Co-Defendant Larios at the time of trial was reasonably based to effectuate the Defendant's interests.[28] Overall, the Defendant has failed to demonstrate the prejudice that resulted from the absence of the testimony which Co-Defendant Larios would have offered.

Next, the Defendant argues that Attorney Karoly was ineffective for failing to challenge the imposition of sentence on the two (2) conspiracies based on the issues of merger, illegality, violation of double jeopardy or sufficiency or weight of the evidence. This argument is legally flawed. Attorney Karoly filed a Notice of Appeal in the Superior Court raising four (4) specific pre-trial and trial issues that he felt had merit. It is Attorney Karoly's practice not to raise issues on appeal that he knew upon which he would not prevail. Attorney Karoly's strategy was to appeal only the issues

---

[28] Attorney Karoly, instead of presenting Co-Defendant Larios at the time of trial (whose testimony posed a substantial risk to the Defendant), called the Defendant's other brother,

15

that had arguable merit, and not to include frivolous issues that had no basis. Consequently, Attorney Karoly did not challenge the sufficiency of the evidence. Similarly, Attorney Karoly did not challenge the legality of the sentence, in which this Court imposed a sentence on each of the separate conspiracy charges (one relating to heroin, and the other relating to cocaine), as the law allows for the convictions of two (2) conspiracies. The charges did not merge, and the sentence was not violative of double jeopardy nor illegal. Therefore, this Court finds that Attorney Karoly was not ineffective in this regard.

Finally, the Defendant argues that Attorney Karoly was ineffective for failing to object when Co-Defendants Ortiz and Von Roestel-Navarro perjured themselves at trial when they represented that their trial testimony would not garner favorable consideration when sentenced. This bald assertion lacks any factual foundation. At the time of trial, both Co-Defendant Von Roestel-Navarro and Co-Defendant Ortiz set forth their beliefs as to the consideration that they would receive for their trial testimony. Specifically, Co-Defendant Von Roestel-Navarro indicated that the Commonwealth offered a ten (10) year minimum sentence, with no agreement on the maximum. He stated that when he reaches his minimum, he would be deported as a result of his immigration detainer. Co-Defendant Von Roestel-Navarro testified that he was instructed to tell the truth at the time of trial. Further, he indicated that he was hoping for a better offer from the Commonwealth, but there were no promises or guarantees in respect thereto. Similarly, Co-Defendant Ortiz placed on the record at the beginning of his testimony that no plea agreement, guarantee, or promise was offered by the Commonwealth. He stated that he hoped for

---

Efrain Larios, to testify on the Defendant's behalf.

16

leniency from the Commonwealth in exchange for this truthful testimony. Based on the record evidence, these witnesses did not commit perjury and the Defendant's argument must fail.

Accordingly, for all of the foregoing reasons, we deny Defendant's motion for post conviction collateral relief.

17